

# IN THE
# Court of Appeals of Indiana

Gregory Brandon,

*Appellant-Plaintiff*

v.

Caregan Transport Inc.,

*Appellee-Defendant*



FILED

Jul 29 2026, 9:24 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

July 29, 2026

Court of Appeals Case No.
25A-PL-2294

Appeal from the Wayne Superior Court

The Honorable Gregory Horn, Judge

Trial Court Cause No.
89D02-2107-PL-37

**Opinion by Judge DeBoer**
Judges Mathias and Kenworthy concur.

**DeBoer, Judge.**

## Case Summary

[1] Gregory Brandon worked as a truck driver for Caregan Transport Inc. (Caregan) from January 2020 until he voluntarily terminated his employment in May of that same year. In July 2021, Brandon sued Caregan to recover unpaid wages under Indiana Code chapter 22-2-5, which is commonly referred to as the Wage Payment Statute. When Brandon later moved for summary judgment, the trial court not only denied his motion but sua sponte ruled it "no longer ha[d] jurisdiction" to reach the merits of his wage payment claim. Appellant's Appendix Vol. 2 at 14. Brandon appeals, arguing the court erred in several respects.

[2] We first hold that the trial court erred in concluding it no longer had jurisdiction. Second, we find the court should have stricken the materials submitted by Caregan in opposition to summary judgment because they were not timely filed by the response deadline. Furthermore, we conclude that Brandon is entitled to judgment in his favor as a matter of law for $5,535.06 in actual unpaid wages. However, the court did not err insofar as it denied summary judgment on Brandon's request for liquidated damages, as he did not meet his burden on summary judgment to negate Caregan's claim that it acted in good faith. We thus affirm in part, reverse in part, and remand for further proceedings.

## Facts and Procedural History

[3] Caregan operates a trucking company based out of Richmond. In January 2020, it hired Brandon as a driver and agreed to pay him forty cents per mile driven. Caregan also agreed to pay $175.00 per night if Brandon had any out-of-state layovers. Brandon was paid weekly, though his pay varied from pay period to pay period depending on how many miles he drove each week. And if Brandon elected to take the week off from driving for Caregan, he would not receive a paycheck for that pay period. Brandon voluntarily terminated his employment with Caregan on May 11, 2020. After that, Caregan failed to pay him for miles driven during the weeks of April 19, April 26, May 3, and May 10.

[4] On July 14, 2021, Brandon sued Caregan under the Wage Payment Statute. He alleged Caregan failed to pay his last four paychecks, did not compensate him for layovers he had during his employment, and had "illegally deducted monies from [his] wages . . . ." *Id.* at 27. In its answer, Caregan admitted that Brandon was a former employee, and it had agreed to pay him pursuant to the terms outlined above. It also admitted it "failed to pay [Brandon] multiple paychecks during and following his separation of employment[,]" blaming Brandon for "fail[ing] to tender Bills of Lading to [Caregan] subsequent to delivering cargo . . . ." *Id.* at 27, 30. However, Caregan denied that it had not compensated Brandon for layovers, made unauthorized deductions from his wages, or failed to pay him his correct wages before he terminated his employment.

[5] Brandon moved for summary judgment on June 13, 2024. In support of that motion, he designated his complaint, Caregan's answer, an excerpt of Caregan's interrogatory answers, his own affidavit, and an affidavit from his attorney. In his summary judgment memorandum, Brandon raised three main contentions. First, he claimed that Caregan had made various unauthorized deductions from his paychecks. To support this claim, Brandon relied on payroll information attached as exhibits to his affidavit, as well as his own declaration that he "did not sign a document permitting Caregan to take money out of [his] wages for advances, fines, or fees." *Id.* at 137.

[6] Second, Brandon contended that Caregan had failed to pay $5,535.06 in wages earned. To calculate this number, he relied on assertions in his affidavit that Caregan owed him compensation for eleven nights spent on out-of-state layovers, totaling $1,925.00 in unpaid layover pay.[1] To calculate his unpaid mileage, Brandon cited his attorney's affidavit, attached to which was a document Brandon's attorney claimed to have personally created "to calculate the miles driven by" Brandon. *Id.* at 147. Based on that document, Brandon asserted Caregan owed him $2,279.72 in unpaid mileage. That, together with the unpaid layover pay, $1,055.34 in certain bonuses and other credits Brandon

---

[1] Brandon's affidavit recounted that he "had ten (10) out-of-state layovers while working for Caregan." Appellant's App. Vol. 2 at 139. However, assertions made earlier in the affidavit recount **eleven** dates he was on layover: January 14-15, 21; February 6, 12, 26-27; and March 3-4, 12, 19, 2020. *See id.* at 138-39. Brandon's summary judgment memorandum relied on these eleven dates to calculate $1,925.00 in unpaid layover pay (*i.e.*, 11 * $175.00). *See id.* at 44.

claimed he earned but never received, and $275.00 in unauthorized deductions,[2] equaled $5,535.06 in unpaid wages.

[7]     Third, Brandon claimed that under the Wage Payment Statute, he was entitled to recover his unpaid wages, costs, attorney's fees, and liquidated damages equal to twice his actual unpaid wages.[3]  In total, Brandon asserted that, as a matter of law, he was entitled to judgment against Caregan "in the amount of $5,535.06 in actual wages, $11,070.12 in liquidated damages, pre-judgment interest of $1,846.42 plus $1.21 per day from June 13, 2024 to the date Judgment is entered, [and] $13,058.66 in statutory attorney fees and costs[.]" *Id.* at 50.

[8]     On June 26, 2024, the trial court issued a summary judgment briefing schedule which gave Caregan until July 13 to respond.  Before that deadline expired, Caregan requested an extension of time, which the trial court granted in an order extending the response deadline to July 19.  On July 19, Caregan attempted to electronically file materials in opposition to summary judgment, but they were rejected by the Indiana Electronic Filing System (IEFS) because

---

[2] Brandon provided no explanation for the significant discrepancy between this value and his earlier assertion that Caregan made $2,281.00 in unauthorized deductions.

[3] The Wage Payment Statute provides that if an employee brings a successful wage payment claim,

> [t]he court shall order as costs in the case a reasonable fee for the plaintiff's attorney and court costs.  In addition, if the court in any such suit determines that the person, firm, corporation, limited liability company, or association that failed to pay the employee . . . was not acting in good faith, the court shall order, as liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee.

Ind. Code § 22-2-5-2 (2015).

one of Caregan's exhibits "contain[ed] formatting that . . . prevent[ed] the system from submitting [the] envelope." *Id.* at 158. As Caregan's attorney would later recount,

4. On July 19, 2024, at 11:08 a.m., [Caregan] electronically filed [several documents opposing summary judgment.]

. . . .

5. For reasons imperceptible to [Caregan's] counsel, [IEFS] issued a "submission failure" reflecting that [one of Caregan's exhibits] received an "[u]nrecoverable system error[.]"

6. As a result of the above system error, [IEFS] indicated that the issue "will prevent the system from submitting your envelope."

7. Counsel left his office shortly after the above-referenced materials were electronically filed to begin a vacation.

8. On Sunday, July 21, 2024, while Counsel was on vacation, he learned of the filing error, and reached out to his assistant to inquire.

9. Counsel's assistant did not see the email from [IEFS] prior to leaving the office for the weekend on July 19, 2024.

10. [Counsel's] assistant called [the county clerk's office] on Monday, July 22, 2024 to seek information about the filing error, and learned that due to a technical issue, [an exhibit] was rejected; and as a result, the entirety of [Caregan's summary judgment] filings were not received into the system.

*Id.* at 69-70 (sixth alteration in original). Accordingly, Caregan did not successfully file its summary judgment response until July 22.

[9] In that response, Caregan moved to strike the mileage calculation prepared by Brandon's attorney, arguing the exhibit would be inadmissible at trial and thus "should not be considered by the Court when determining whether summary judgment is appropriate . . . ." *Id.* at 62. Moreover, Caregan claimed that without the mileage calculation, "the Court ha[d] no evidence to support any claim relative to Brandon's allegations of miles driven for which he wasn't paid." *Id.* Caregan also argued that while it did owe Brandon unpaid wages, there was a factual dispute regarding the exact amount owed because "its records do not comport with the records that Brandon's counsel created." *Id.* at 60. According to Caregan, it owed Brandon just $1,863.43 in unpaid mileage, $416.29 less than the $2,279.72 Brandon said he was owed. Additionally, it asserted that Brandon was not entitled to liquidated damages because Caregan had acted in good faith. Specifically, "Brandon had an obligation to [report] miles driven, which produced his pay[,]" and "it was difficult to calculate Brandon's pay due to his routine failures in this regard." *Id.* at 59. Caregan also claimed to have attempted to forward a check to Brandon through the Illinois Department of Labor to settle the wage claim, but that check had been returned "[f]or reasons unknown to Caregan[.]"[4] *Id.* at 60. To support these

---

[4] Brandon is an Illinois resident.

assertions, Caregan designated, among other exhibits, payroll and mileage records, its written policy requiring drivers to report completed shipments (and thus miles driven) by submitting bills of lading, and an affidavit by Caregan's president.[5]

[10] On the afternoon of the 22nd, Brandon moved to strike Caregan's summary judgment response, relying on the "well[-]established" rule that a party cannot respond to a motion for summary judgment after the deadline to do so has passed. *Id.* at 67. In opposition to that motion, Caregan conceded that its summary judgment response was "not timely . . . filed due to a technical error associated with" IEFS but argued that this failure aside, its response was "submitted prior to the deadline . . . ." *Id.* at 72. On September 3, the trial court denied Brandon's motion to strike, reasoning as follows:

> It is well settled that the Court may not consider summary judgment filings after the due date established by the court. *See Borsuk v. Town of St. John*, 820 N.E.2d 118 (lnd. 2005). Indeed, this is a bright line rule that must be followed. Here, however, [Caregan] *did* attempt to file its Response to [Brandon's] Motion for Summary Judgment, Memorandum in Support, and Designation of Evidence with Exhibits prior to the deadline

---

[5] Brandon did not include copies of Caregan's designated evidence in his appendix, and Caregan did not file an appendix of its own. Still, those documents are part of the record on appeal, and we've accessed them using our Odyssey Case Management System. *See* Ind. Appellate Rule 27 ("The Record on Appeal shall consist of the Clerk's Record and all proceedings before the trial court . . . , *whether or not transcribed or transmitted to the Court on Appeal*.") (emphasis added). We note that the failure of Brandon's attorney to include Caregan's designated evidence in the appendix is particularly disappointing, as he was previously scolded by this Court and found to have engaged in procedural bad faith for "including a woefully incomplete appendix" in addition to committing other Appellate Rule violations in a prior appeal. *See Gallo v. Sunshine Car Care, LLC*, 185 N.E.3d 392, 399, 404 (Ind. Ct. App. 2022), *reh'g denied*, *trans. denied*.

established by the Court. They were submitted to the Indiana Court's Odyssey Case Management System prior to the deadline established by the Court . . . .

This court simply cannot find that [Caregan] failed to timely file its responsive materials prior to the deadline established by the Court. Counsel for [Caregan] prepared all of its responsive materials and submitted them to the State's filing system prior to the deadline. Indeed, they went through the electronic system, although resulting in a "system error." The "error" from this Court's viewpoint was a "technical" error not associated with [Caregan] or [Caregan's] counsel but, rather, with the Indiana Court's Odyssey Case Management system. The submission and the "System Failure" response both occurred prior to the Court's established filing deadline.

It seems to this Court that to rule in [Brandon's] favor on this matter would be to put form over substance and is not at all in the true spirit or meaning of Trial Rule 56 or *Borsuk* . . . .

*Id.* at 24-25.

[11] Brandon asked the court to reconsider its decision, arguing that denial of his motion to strike did not comply with Trial Rule 87(J), which applies when e-filing is prevented by an IEFS failure or other circumstances not caused by the filer. According to Brandon,

[Caregan's] summary judgment response was not filed due to an IEFS failure, but the failure of counsel for [Caregan] to follow the instructions to correct an incompatible PDF file and re-submit. Moreover, [Caregan's] Summary Judgment was not filed timely because of counsel for [Caregan's] failure to follow Trial Rule 87(J) and conventionally file the pleading if correcting the PDF

would not have worked. Finally, this Court cannot *sua sponte* grant[] [Caregan] relief pursuant to Trial Rule 87(J) because [Caregan] failed to request it and the summary judgment deadline is a deadline that by law cannot be extended.

*Id.* at 79. Caregan opposed the motion to reconsider and asked the court to retroactively grant relief under Trial Rule 87. In Caregan's view, the submission error resulted from an IEFS failure, and it was therefore entitled to a one-day extension of the summary judgment response deadline. The court agreed with Caregan and retroactively extended the summary judgment filing deadline by one day.

[12] On December 9, 2024, the court held a hearing on the motion for summary judgment and took the matter under advisement. On January 3, 2025, the court issued an order requesting that the parties "submit additional briefing as to [Brandon's] position that several deductions made from [his] pay . . . , such as fees, fines, and advances [were] contrary to Indiana law and [were] impermissible[.]" *Id.* at 90. Brandon filed his supplemental brief on January 24, in which he argued the deductions did not comply with statutory wage assignment requirements. In Caregan's supplemental brief, filed February 13, it acknowledged its non-compliance with those requirements but asserted the deductions were made "at Brandon's express direction." *Id.* at 105. Moreover, Caregan argued for the first time that Brandon's wage payment claim must fail in its entirety because he had not earned a "wage":

> Caregan does not view the monies paid to Brandon as "wages". As previously affirmed by the company president, drivers are

paid forty cents ($.40) per mile. Drivers are not required to report to work at any specific time, or at all. It is entirely up to drivers whether they attempt to earn a living through the delivery of freight. If a driver desires to work, he secures a freight load and then must deliver the same to the receiving location. Next, the driver must turn in a bill of lading so that Caregan may appropriately calculate his mileage driven.

Brandon did not earn an hourly rate. He did not clock in at a specified time each morning and then clock out at a different specified time. Payments to Brandon for employment services rendered were not regular and consistent like a normal "nine to five" employee. Further, even if this matter is dealing with "wages", the "ten-day" requirement . . . was frustrated by Brandon due to him not complying with the bill of lading requirements.[6] In any event, . . . monies [were] not earned unless Brandon "completed delivered sales". Thus, payments were not necessarily paid on a regular basis. . . . Brandon's payments could vary greatly, and even include periods of time where no payments are made. As such, this Court . . . should conclude that these factors support the determination that, as a matter of law, the payments made to Brandon do not constitute "wages" under the Wage Payment Statute.

*Id.* at 106-07.

[13]  On February 16, Brandon moved to strike Caregan's supplemental brief. According to Brandon, Caregan's assertion that he expressly authorized the deductions from his paychecks found no support in the designated evidence.

---

[6] Indiana Code section 22-2-5-1(b) requires that "[p]ayment shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment."

Moreover, Brandon alleged Caregan exceeded the scope of the court's order requesting supplemental briefing by raising for the first time that his compensation did not constitute a "wage" under the Wage Payment Statute. At a hearing on that motion to strike on February 27, Caregan's attorney acknowledged that while Brandon's payroll records indicate that Caregan had issued advances that were later deducted from his pay, it had not designated any evidence that those advances were issued at Brandon's request. He also said, "[I]f the Court determines the advances need to be given back, I will concede that point." Transcript at 36. However, counsel for Caregan claimed the court did not have to reach that issue once it made "a determination as to whether the wage payment statute applies at all." *Id.* at 37.

[14] After that hearing, on June 2, 2025, the trial court issued two orders on the pending motions. As to Brandon's motion to strike, the court found that Caregan had not designated any evidence "that Brandon expressly requested advances[,]" and ruled that any references to factual assertions not supported by the designated evidence should be stricken. Appellant's App. Vol. 2 at 21. The court also agreed with Brandon that Caregan had raised issues outside the scope of the order for supplemental briefing but ruled it would not strike "case law, proper application of case law, or legal application . . . ." *Id.* The court further declined to strike "any inferences that can be made from properly designated evidence" or "Caregan's argument as to the inapplicability of Indiana's Wage Payment [S]tatute as to mileage, etc." *Id.*

As for Brandon's motion for summary judgment, the court agreed with Caregan that "Brandon's mileage pay does not qualify as 'wages' in order to implicate the Wage Payment Statute." *Id.* at 17. The court based that determination on *Bragg v. Kittle's Home Furnishings, Inc.*, 52 N.E.3d 908, 920 (Ind. Ct. App. 2016), *reh'g denied*, *trans. denied*, which the court cited for the proposition that whether an employee's compensation constitutes a "wage" depends on "factors which affect and impact the practicality of handling [the compensation] or arriving at an amount due within the ten (10) required days." *Id.* at 18. Under that standard, the court determined Brandon's pay for miles driven did not qualify as wages because

> a driver may make three (3) runs this week and none (0) the following three (3) weeks. Payment is contingent upon completing a task and not based solely on time. Moreover, . . . payment is also dependent upon submitting proof of completion of that task by way of submitting Bills of Lading.

*Id.* Because Caregan had not paid Brandon a "wage," the court ruled that "his Motion for Summary Judgment must be denied and, further, under Indiana case law the Court does not have jurisdiction to proceed further, and the matter must go to the Department of Labor" (DOL). *Id.* at 18-19. The court applied the same logic to Brandon's arguments about unauthorized deductions, attorney's fees, and liquidated damages because "[s]uch request[s] hinge[] upon whether or not [he] was properly paid for 'wages' under Indiana's Wage

Payment Statute."[7]  *Id.* at 19.  Accordingly, the court concluded that "Brandon's Motion for Summary Judgment must be denied in all particulars." *Id.* at 20.

Brandon filed a motion to correct errors on July 2, which the court summarily denied on August 19.  Brandon now appeals.

## Discussion and Decision

Brandon raises several issues on appeal, which we consolidate and restate as:

1) Whether the trial court erred in ruling that it lacked jurisdiction to hear his wage payment claim;

2) Whether the trial court erred in denying his motion to strike Caregan's summary judgment response; and

3) Whether the trial court erred in denying his motion for summary judgment.

We address these issues in turn.

## 1. The Trial Court's Jurisdiction

As a threshold issue, Brandon challenges the trial court's determination that "it ha[d] no jurisdiction to proceed further and Brandon should proceed before

---

[7] The court did not address Brandon's claim for unpaid layover pay, performance bonuses and other credits, or Caregan's motion to strike Brandon's attorney's affidavit.

the" DOL.  *Id.* at 19.  The court provided little explanation for why it believed it lacked jurisdiction or how it lost jurisdiction it once had.  The court's order provides that its jurisdictional holding was supported by "Indiana case law . . . ," but it cited no such authority.  *Id.* at 18.  Nor is it entirely clear what the court meant by "jurisdiction," though presumably it was referring to subject matter jurisdiction.  *See K.S. v. State*, 849 N.E.2d 538, 540 (Ind. 2006) (explaining "Indiana trial courts possess two kinds of 'jurisdiction'": subject matter jurisdiction and personal jurisdiction).

[19]     "Subject matter jurisdiction is the power of a court to hear and decide the general class of actions to which a particular case belongs."  *Parkview Hosp., Inc. v. Geico Gen. Ins. Co.*, 977 N.E.2d 369, 371 (Ind. Ct. App. 2012), *trans. denied*. Indiana courts obtain that power through the state constitution or a statute, *id.* at 372, and issues of subject matter jurisdiction are "resolved by determining whether a claim falls within the [court's] general scope of statutory authority[,]" *Terry v. Cmty. Health Network, Inc.*, 17 N.E.3d 389, 392 (Ind. Ct. App. 2014). We review questions of subject matter jurisdiction de novo.  *State v. Reinhart*, 112 N.E.3d 705, 710 (Ind. 2018).

[20]     Here, the trial court was authorized by statute to hear wage payment claims. The Wage Payment Statute permits "current employees and those who have voluntarily left employment[,]" *Gallo v. Sunshine Car Care, LLC*, 185 N.E.3d 392, 401 n.3 (Ind. Ct. App. 2022), *reh'g denied*, *trans. denied*, to bring a claim for unpaid wages "in any court having jurisdiction of a suit to recover the amount

due to the employee[,]"[8] Ind. Code § 22-2-5-2 (2015). And as a court of general jurisdiction, the trial court here has "original and concurrent jurisdiction in all civil cases . . . ." Ind. Code § 33-29-1-1.5(1) (2019); *see Lakes & Rivers Trans., a Div. of Jack Gray v. Rudolph Robinson Steel Co.*, 736 N.E.2d 285, 290 (Ind. Ct. App. 2000) ("Courts of general jurisdiction are presumed to have subject matter jurisdiction.").

[21]     The court's reasoning that it "ha[d] no jurisdiction to proceed further" in light of its conclusion that "Brandon's earnings do not qualify as 'wages' under the Wage Payment Statute" is evocative of the defunct concept of jurisdiction over the case. Appellant's App. Vol. 2 at 19. Indiana's appellate courts used to describe "[j]urisdiction of the particular case" as "the power of the court to hear a specific case within the class of cases over which the court has subject matter jurisdiction." *Cox v. Town of Rome City*, 764 N.E.2d 242, 247 (Ind. Ct. App. 2002). But the Court abolished the concept in *K.S.*, explaining,

> [W]hile we might casually say, "Judge Flywheel assumed jurisdiction," or "the court had jurisdiction to impose a ten-year sentence," such statements do not have anything to do with the law of jurisdiction, either personal or subject matter. *Real* jurisdictional problems would be, say, a juvenile delinquency

---

[8] This contrasts with the Wage Claims Statute, Indiana Code chapter 22-2-9, a closely related series of statutes which apply "to employees who have been involuntarily separated from work by their employer[.]" *Gallo*, 185 N.E.3d at 401 n.3. Unlike the Wage Payment Statute, claims under the Wage Claims Statute "must be submitted to the DOL for administrative enforcement and exhaustion of the administrative remedy is required *before* filing a lawsuit." *Id.* at 400.

adjudication entered in a small claims court, or a judgment rendered without any service of process.

849 N.E.2d at 541-42; *see also Wike v. Grandview Solar Project, LLC*, ___ N.E.3d ___, 2026 WL 1834349, at *8 (Ind. June 24, 2026) ("[O]ur Court has stopped talking about jurisdiction over the case.") . Accordingly, whether Brandon can succeed on the merits of his wage payment claim is not relevant to the trial court's statutory authority to adjudicate it. The court erred in concluding otherwise, and we therefore reverse its determination that it lacks jurisdiction over this matter.

## 2. Motion to Strike Caregan's Summary Judgment Response

[22] Next, Brandon contends the trial court erred in denying his motion to strike the materials filed by Caregan in opposition to summary judgment. Generally, "a trial court has broad discretion in ruling on motions to strike in the summary judgment context." *Arnett v. Est. of Beavins*, 184 N.E.3d 679, 683-84 (Ind. Ct. App. 2022). However, Brandon contends (and we agree) that the trial court had no such discretion here because "late responses to summary judgment motions cannot be considered." Appellant's Brief at 17. In support of that contention, Brandon relies on the well-established rule that

> [w]hen a nonmoving party fails to respond to a motion for summary judgment within 30 days by either filing a response, requesting a continuance under Trial Rule 56(I), or filing an affidavit under Trial Rule 56(F), the trial court cannot consider summary judgment filings of that party subsequent to the 30-day period.

*Mitchell v. 10th and The Bypass, LLC*, 3 N.E.3d 967, 972 (Ind. 2014) (quoting *Borsuk*, 820 N.E.2d at 123 n.5) (footnotes omitted).

[23]     This bright-line rule was first clearly expressed in *Desai v. Croy*, where, against a backdrop of inconsistent precedent, this Court held that "a trial court may exercise discretion and alter time limits under 56(I) only if the nonmoving party has responded or sought an extension within thirty days from the date the moving party filed for summary judgment." 805 N.E.2d 844, 850 (Ind. Ct. App. 2004), *trans. denied*, *cited favorably by Borsuk*, 820 N.E.2d at 123 n.5. As another panel of this Court later clarified,

> not only must a nonmovant file a response or request for a continuance during the initial thirty-day period, but the nonmovant "must also file a response, file an affidavit pursuant to T.R. 56(F), or show cause for alteration of time pursuant to T.R. 56(I) during *any additional period granted by the trial court*."

*Miller v. Yedlowski*, 916 N.E.2d 246, 251 (Ind. Ct. App. 2009) (quoting *Thayer v. Gohil*, 740 N.E.2d 1266, 1268 (Ind. Ct. App. 2001), *trans. denied*), *trans. denied*. Said differently, "where a nonmovant timely seeks and obtains an extension of time to respond, the bright-line rule continues to apply to the new filing deadline." *Andry v. Thorbecke*, 218 N.E.3d 600, 604 (Ind. Ct. App. 2023), *trans. denied*.

[24]     Here, it is undisputed that Caregan failed to timely file its summary judgment materials by the July 19, 2024 deadline. Rather, Caregan contends its unsuccessful electronic filing attempt was precipitated by "an IEFS failure" and

it is therefore entitled to relief under Indiana Trial Rule 87. Appellee's Br. at 19. Rule 87 governs electronic filing and provides, in relevant part:

**(J) Inability to E-File.**

(1) *Indiana E-Filing System Failures.*

(a) The rights of the parties shall not be affected by an IEFS failure.

. . . .

(c) With the exception of deadlines that by law cannot be extended, when E-Filing is prevented by an IEFS failure, the time allowed for the filing of any document otherwise due at the time of the IEFS failure is extended by one day for each day on which such failure occurs, unless otherwise ordered by the court.

(d) Upon motion and showing of an IEFS failure the court must enter an order permitting the document to be considered timely filed and modify responsive deadlines accordingly.

Ind. Trial Rule 87(J)(1). While no appellate court has construed Trial Rule 87(J), it's clear that it does not provide an avenue for relief under these circumstances.

[25] We first note that "[i]nterpretation of our trial rules is a question of law that we review *de novo*." *Morrison v. Vasquez*, 124 N.E.3d 1217, 1219 (Ind. 2019). "When construing a trial rule, we employ . . . standard tools of statutory

interpretation[,]" *Noble County v. Rogers*, 745 N.E.2d 194, 197 n.3 (Ind. 2001), meaning we must give an unambiguous trial rule "its clear and plain meaning[,]" *Suggs v. State*, 51 N.E.3d 1190, 1194 (Ind. 2016) (quoting *State v. Evans*, 810 N.E.2d 335, 337 (Ind. 2004), *reh'g denied*). The clear and plain meaning of the phrase "IEFS failure" refers to situations when the electronic filing system is not able "to perform a normal function" or has experienced "an abrupt cessation of normal functioning[.]" *See Failure*, MERRIAM-WEBSTER.COM, https://www.merriam-webster.com/dictionary/failure [https://perma.cc/MW46-QJZR].

[26] When Caregan tried to submit a document with certain formatting that IEFS could not process, IEFS operated *as intended*. It rejected the envelope and sent a "Submission Failure" email to Caregan's attorney *one minute after he submitted it* with instructions to "try re-saving or re-creating the document[] as a PDF or printing and scanning the document[] as a PDF, and re-file the envelope with the recreated document[]." Appellant's App. Vol. 2 at 158. The E-Filing User Guide instructs e-filers to "monitor [their] [p]ending filings" and "[p]ay special attention to messages with [certain] subject lines after [they've] submitted a filing . . . ," including the subject line: "Submission Failed for Envelope Number[.]"[9] Caregan's attorney didn't follow those instructions, and he can't

---

[9] E-Filing User Guide at 14 (updated May 15, 2026), available at https://www.in.gov/courts/help/efiling/ [https://perma.cc/LA7B-BUS7].

escape the consequences of his failure to do so by blaming it on an electronic filing system that was operational.

[27] We are sympathetic to the trial court's concern that striking Caregan's summary judgment materials would be harsh under the circumstances. But the bright-line rule is just that, and it leaves us with no option but to hold that the trial court should have stricken Caregan's untimely response. That said, "a trial court is not required to grant an unopposed motion for summary judgment." *Murphy v. Curtis*, 930 N.E.2d 1228, 1233 (Ind. Ct. App. 2010), *trans. denied*. Trial Rule 56(C) provides that "[s]ummary judgment *shall not be granted as of course* because the opposing party fails to offer opposing affidavits or evidence, but the court shall make its determination from the evidentiary matter designated to the court." (emphasis added). Thus, confining our analysis to the evidentiary materials designated by Brandon, we turn to whether he is entitled to judgment in his favor as a matter of law on the merits of his summary judgment motion. *See Quirk v. Delaware Cnty.*, 91 N.E.3d 1008, 1014 (Ind. Ct. App. 2018) ("[S]ummary judgment is awarded on the merits of the motion, not on technicalities.").

## 3. Brandon's Motion for Summary Judgment

[28] We review a decision to grant or deny summary judgment de novo and apply the same standard as the trial court. *Isgrig v. Trs. of Ind. Univ.*, 256 N.E.3d 1238, 1244 (Ind. 2025). Pursuant to Indiana Trial Rule 56(C), the initial burden is on the moving party to make a "prima facie showing that there are no genuine

issues of material fact and that it is entitled to judgment as a matter of law." *Id.* (quoting *Reed v. Reid*, 980 N.E.2d 277, 285 (Ind. 2012)). If the moving party satisfies this initial burden, "the burden then shifts to the non-moving party to come forward with evidence establishing the existence of a genuine issue of material fact." *Id.* Our review is limited "to the materials designated at the trial level." *Gunderson v. State,* 90 N.E.3d 1171, 1175 (Ind. 2018), *cert. denied.* We construe any doubts as to the facts or reasonable inferences in favor of the non-moving party, and while the trial court's findings and conclusions "aid our review, . . . they do not bind us." *Sandoval v. Willow Lake Ests. Home Owners Ass'n*, 255 N.E.3d 1181, 1186 (Ind. Ct. App. 2025).

[29] Brandon's summary judgment motion raised three categories of unpaid compensation that require separate analyses: (1) his mileage compensation, (2) his layover pay, and (3) unauthorized deductions, performance bonuses, and other credits he says were never paid. Within each of those categories, Brandon also requested liquidated damages, which we address separately.

### 3.1. Mileage Compensation

[30] Despite Caregan's admission that it failed to pay Brandon $1,863.43 in mileage pay, the trial court concluded that Brandon's complaint must fail because his "mileage pay does not qualify as 'wages' in order to implicate the Wage Payment Statute." Appellant's App. Vol. 2 at 17. We do not agree, as our precedents make clear that "wages" under the Wage Payment Statute are "the wages paid on a regular periodic basis for regular work done by the employee . . . ." *Gress v. Fabcon, Inc.*, 826 N.E.2d 1, 3 (Ind. Ct. App. 2005) (quoting *Wank v.*

*St. Francis Coll.*, 740 N.E.2d 908, 912 (Ind. Ct. App. 2000), *trans. denied*). Several considerations lead us to conclude that Brandon's forty-cent-per-mile compensation satisfies that standard.[10]

[31]     The Wage Payment Statute "governs both the amount and the frequency with which an employer must pay its employees." *Bragg*, 52 N.E.3d at 919. It provides that an employer must "pay each employee at least semimonthly or biweekly, if requested, the amount due the employee." Ind. Code § 22-2-5-1(a) (2007). And it requires (with specified exceptions) that such "[p]ayment[s] shall be made for all wages earned to a date not more than ten (10) business days prior to the date of payment." I.C. § 22-2-5-1(b). As discussed above, when an employer "fail[s] to make payment of wages" as required by section 22-2-5-1, the Wage Payment Statute permits former employees like Brandon who voluntarily terminated their employment to bring a cause of action against their former employer. I.C. § 22-2-5-2.

[32]     Though the Wage Payment Statute does not define "wages[,]" our Supreme Court has applied the definition from the "closely associated" Wage Claims

---

[10] To the extent Caregan asserts on appeal that Brandon was an independent contractor, not an employee, and therefore could not bring an action under the Wage Payment Statute—that argument fails for two reasons. *See* Appellee's Br. at 25 ("Brandon [was] more akin to an independent contractor than an employee."). First, Caregan admitted in its answer that Brandon was its employee. *See* Appellant's Appendix Vol. 2 at 26, 29. Admissions made by a party in a responsive pleading are judicial admissions which "are conclusive and binding on the trier of fact . . . ." *Franciscan ACO, Inc. v. Newman*, 154 N.E.3d 841, 847 (Ind. Ct. App. 2020), *trans. denied*. Having admitted Brandon was its employee, Caregan cannot defeat summary judgment by making a contrary assertion. Second, Caregan did not raise its independent contractor argument to the trial court, and arguments raised for the first time on appeal are waived. *Holtswarth v. Oliver*, 279 N.E.3d 360, 367 (Ind. Ct. App. 2026).

Statute. *Franciscan All. Inc. v. Metzman*, 192 N.E.3d 957, 966 (Ind. Ct. App. 2022) (citing *Highhouse v. Midwest Orthopedic Inst., P.C.*, 807 N.E.2d 737, 739 (Ind. 2004)), *trans. denied*. The Wage Claims Statute defines "wages" as "all amounts at which the labor or service rendered is recompensed, whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or in any other method of calculating such amount." Ind. Code § 22-2-9-1(b) (1993). As summarized by this Court in *Gress*, when determining whether a method of compensation constitutes a "wage" under this definition,

> [t]he name given to the method of compensation is not controlling. *Gurnik v. Lee*, 587 N.E.2d 706, 709 (Ind. Ct. App. 1992). Rather, we will consider the substance of the compensation to determine whether it is a wage, and therefore subject to the Wage Payment Statute. *Id.* . . . [I]f compensation is not linked to the amount of work done by the employee or if the compensation is based on the financial success of the employer, it is not a "wage." *Pyle v. Nat'l Wine & Spirits Corp.*, 637 N.E.2d 1298, 1300 (Ind. Ct. App. 1994).

826 N.E.2d at 3.

[33] In determining that Brandon's mileage pay was not a "wage" under the Wage Payment Statute, the trial court relied extensively on *Bragg*, where a panel of this Court reasoned that an employee's commission pay "did not qualify as wages . . . ." 52 N.E.3d at 912. As *Bragg* exemplifies, our appellate courts have developed several factors to determine whether commissions, bonuses, or similar forms of compensation fall under the Wage Payment Statute's ambit, including whether they are (1) linked to a contingency outside the employee's

control, (2) calculated in relation to time worked, (3) paid on a regular basis, and (4) paid in addition to other wages. *Id.* at 924-927. Generally, bonuses and commissions constitute "wages" if they "directly relate[] to the time that an employee works, [are] paid with regularity, and [are] not dictated by the employer's financial success." *Highhouse*, 807 N.E.2d at 739.

[34] Under the *Bragg* factors, Brandon's mileage pay—which was directly tied to the amount of work he performed for Caregan—constituted a wage. But we question the need to apply the *Bragg* factors at all. The trial court here was not asked to analyze a bonus or commission structure that didn't obviously satisfy the statutory definition of "wages." Instead, Brandon's mileage compensation fits neatly into the plain and unambiguous text of section 22-2-9-1, which must control over judicially crafted considerations. *St. Vincent Hosp. & Health Care Ctr., Inc. v. Steele*, 766 N.E.2d 699, 704 (Ind. 2002) ("Clear and unambiguous statutory meaning leaves no room for judicial construction."). Brandon was "recompensed" for his "labor" (*i.e.*, driving for Caregan), in an amount equal to forty cents for each mile driven in a given week. While his pay varied week by week based on whether and how much he decided to drive for Caregan, there's nothing new in the realization that a non-salaried employee's compensation varies from pay period to pay period based on the number of hours worked, tasks completed, etc. The statutory definition of "wages" provides that as long as an employee's compensation is tied to "the labor or service rendered[,]" it constitutes a wage "whether the amount is fixed or ascertained on a time, task, piece, or commission basis, or *in any other method of calculating such amount*."

I.C. § 22-2-9-1(b) (emphasis added). Brandon drove a truck for Caregan, and his compensation was calculated based on the number of miles driven each week. Thus, he earned a wage under the plain meaning of section 22-2-9-1.[11]

[35] Moreover, we reiterate that Caregan did not dispute that it owes Brandon unpaid mileage compensation, and the parties' positions on the amount owed are not that far off. Brandon asserts that he is owed $2,279.72 in unpaid mileage, while Caregan says it owed Brandon just $1,863.43.[12] Even if a $416.29 difference between the parties' positions could create a *genuine* issue of material fact in the first place, the fact that Caregan's designated materials must be stricken leaves Brandon's uncontested evidence that he is owed $2,279.72 in unpaid mileage. We therefore reverse the trial court's denial of Brandon's motion for summary judgment as it pertains to Caregan's liability for unpaid mileage in that amount.

---

[11] Because we reverse the trial court's conclusion that Brandon's mileage compensation was not a wage under the Wage Payment Statute, we do not address Brandon's argument that the court should not have permitted Caregan to raise that issue for the first time in its supplemental summary judgment brief. *See* Appellant's Br. at 22-25.

[12] As noted in the facts above, the trial court did not rule on Caregan's motion to strike the mileage calculation prepared by Brandon's attorney. *See supra* note 7. Caregan did not object to Brandon's designated evidence in its arguments on appeal and instead defended the court's denial of summary judgment on the grounds that mileage pay is not a wage under the Wage Payment Statute. Because "[m]aking an argument in a brief about the general sufficiency of evidence on summary judgment is not the same thing as moving to strike the affidavit or otherwise raising a specific objection about a defective affidavit[,]" Caregan has waived any challenge to Brandon's mileage calculation on appeal, and we express no opinion on whether it should have been stricken. *A House Mechs., Inc. v. Massey*, 124 N.E.3d 1257, 1265 (Ind. Ct. App. 2019).

### 3.2. Layover Pay

[36] Brandon further argues that he is entitled to $1,925.00 in unpaid layover pay. We first note that though Caregan asserted on appeal that Brandon's mileage pay was not a wage, it provided no such argument related to Brandon's layover pay. As "[w]e will not step in the shoes of the advocate and fashion arguments on [a party's] behalf," *Miller v. Patel*, 212 N.E.3d 639, 657 (Ind. 2023), we assume for the purposes of this discussion that unpaid layover compensation is actionable under the Wage Payment Statute. Moreover, Brandon's affidavit satisfied his initial burden to show an absence of an issue of fact about whether he is owed unpaid layover compensation. While Caregan's president affirmed in his affidavit that "Brandon has been paid for all times that he ha[d] been subject to a layover[,]"[13] that affidavit was among the late-filed materials that should have been stricken. Thus, we reverse the trial court's denial of Brandon's motion for summary judgment on the portion of his claim seeking to recover layover pay.

### 3.3. Deductions, Performance Bonuses, and Other Credits

[37] Next, Brandon argues that as a matter of law, he "is entitled to $275.00 in illegally deducted wages." Appellant's Br. at 31. According to Brandon, these deductions were not authorized by statute because they were made "[w]ithout a

---

[13] Affidavit of Chaz Bryant, ¶ 11.

written and signed wage assignment[.]"[14]  *Id.*  Furthermore, Brandon cites *E & L Rental Equipment, Inc. v. Bresland* for the proposition that an employee can bring a claim to recover unauthorized deductions under the Wage Payment Statute. 782 N.E.2d 1068, 1071 (Ind. Ct. App. 2003) (affirming judgment for employee where "[t]he evidence at trial indicated that the parties did not have a written agreement to deduct the amounts from [the employee's] check and that the deductions were for a purpose not authorized by the statute").  Additionally, Brandon argued below and on appeal that he is owed $1,055.34 in performance bonuses and other credits made to his payroll records that he never received.

[38]  Caregan did not address the deductions, bonuses, or credits in its arguments on appeal, and Brandon has shown at least prima facie error in the trial court's decision to deny summary judgment on the that portion of his claim.  *See Evansville Auto., LLC v. Labno-Fritchley*, 207 N.E.3d 447, 454 (Ind. Ct. App. 2023) ("An appellee's failure to respond to an issue raised by an appellant is akin to failure to file a brief, and subjects the appellee to reversal upon the appellant's showing of *prima facie* error on that issue." (quoting *Hacker v. Holland*, 575 N.E.2d 675, 676 (Ind. Ct. App. 1991), *denying reh'g*, *trans. denied*), *trans. denied*.  Indeed, Caregan acknowledged below that it deducted sums from

---

[14] Indiana Code section 22-2-6-1(a) provides that "[a]ny direction given by an employee to an employer to make a deduction from the wages to be earned by said employee, after said direction is given, shall constitute an assignment of the wages of said employee."  And for such an assignment to be valid, it must (among other requirements) be "(A) in writing; (B) signed by the employee personally; (C) by its terms revocable at any time by the employee upon written notice to the employer; and (D) agreed to in writing by the employer." Ind. Code § 22-2-6-2(a)(1) (2026).

Brandon's pay without satisfying the conditions set forth in Indiana Code section 22-2-6-2(a). Moreover, at the February 27, 2025 hearing, Caregan's attorney "concede[d] th[e] point" that "the [deductions] need to be given back[.]" Tr. at 36. Finally, Brandon argued that he never received the bonuses or other credits that were shown on his payroll records, and Caregan does not contest on appeal that these sums cannot be recovered under the Wage Payment Statute. Thus, we reverse the trial court's denial of Brandon's motion for summary judgment on the portion of his claim seeking to recover $275.00 in unauthorized deductions and $1,055.34 in unpaid performance bonuses and other credits.

### 3.4 Liquidated Damages

[39] Finally, Brandon asserts he is entitled to liquidated damages on all three categories of unpaid wages because "Caregan has not demonstrated a good faith reason" why those wages were not paid. Appellant's Br. at 26, 33. But this assertion turns the Trial Rule 56 standard on its head. As discussed above, the Wage Payment Statute provides that "if the court . . . determines" an employer who failed to pay wages "was not acting in good faith, the court shall order, as liquidated damages for the failure to pay wages, that the employee be paid an amount equal to two (2) times the amount of wages due the employee." I.C. § 22-2-5-2. Indiana appellate courts have yet to expressly rule whether the employee or the employer bears the burden of proof on the issue of good faith. *See Prater v. Harris & Sons Landscaping, LLC*, 175 N.E.3d 855, 858-59 (Ind. Ct. App. 2021). However, even if Caregan had the ultimate burden of proof on this

issue, Brandon—as the party seeking summary judgment—"had the *initial burden* to designate evidence to affirmatively negate" Caregan's claim that it acted in good faith. *Smith v. Taulman*, 20 N.E.3d 555, 571 (Ind. Ct. App. 2014) (emphasis added).

[40] Brandon did not meet that initial burden, as he designated no evidence beyond Caregan's mere failure to comply with the Wage Payment Statute to support his argument that Caregan didn't act in good faith. In fact, he designated evidence that Caregan *did* have a good faith reason for not paying his mileage pay. Caregan explained in its interrogatory answers that after Brandon voluntarily terminated his employment, Caregan "discovered that [Brandon's] failure to timely turn in bills of lading resulted in [Brandon] being owed the sum of $1,853.43, which Caregan . . . , through its attorney, has already agreed to pay." Appellant's App. Vol. 2 at 134. We cannot say, based on the record before us, that Brandon satisfied his initial burden on summary judgment to show that Caregan failed to act in good faith. We thus affirm the trial court's denial of Bradon's motion for summary judgment on his claim for liquidated damages.[15]

---

[15] Because we find genuine issues of material fact remaining on Brandon's request for liquidated damages, we do not address his requests for costs and attorney's fees. *See Song v. Iatarola*, 76 N.E.3d 926, 938 (Ind. Ct. App. 2017) ("A request for attorney fees is not ripe for consideration until a judgment has been reached."), *aff'd on reh'g*, *trans. denied*. The trial court should consider those requests at or after the entry of final judgment.

## Conclusion

For these reasons, we reverse the trial court's conclusion that it lacks jurisdiction over Brandon's claim under the Wage Payment Statute. Furthermore, we affirm in part and reverse in part the denial of Brandon's motion for summary judgment, as (1) there is no genuine issue of material fact that Caregan is liable to Brandon for $5,535.06 in actual unpaid wages, but (2) there are issues of fact about whether Brandon is entitled to liquidated damages. We remand with instructions for the trial court to enter partial summary judgment in Brandon's favor as set forth above, deny Brandon's motion for summary judgment in all other respects, and conduct further proceedings consistent with this decision.

Affirmed in part, reversed in part, and remanded.

Mathias, J., and Kenworthy, J., concur.

ATTORNEY FOR APPELLANT

Ronald E. Weldy
Weldy Law
Fishers, Indiana

ATTORNEY FOR APPELLEE

Andrew J. Sickmann
Boston Bever Forrest Cross & Sickmann
Richmond, Indiana